UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ANDRE ANTROBUS,

                           Plaintiff,

        -v-

CITY OF NEW YORK,

                          Defendant.

------------------------------------------------------------X

No. 11 Civ. 2524 (RA)

OPINION AND ORDER

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/27/14

RONNIE ABRAMS, United States District Judge:

    Plaintiff, Andre Antrobus, brings this action *pro se* under 42 U.S.C. § 1983 against Defendant, the City of New York. He alleges that officers at two city correctional facilities interfered with his mail. The City moves to dismiss the case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The City's motion is granted in part and denied in part.

**I.    Background**

    For purposes of this motion, the Court accepts as true all facts alleged by Plaintiff. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). The Court will also consider the supporting allegations contained in signed witness statements of fellow inmates which Plaintiff has attached to his Amended Complaint. See Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993) (noting that, when deciding a motion to dismiss, the court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference").

    The gravamen of the Amended Complaint is that Plaintiff's mail has been interfered with

at two New York City correctional facilities, the George R. Vierno Center ("GRVC") and the Anna M. Kross Center ("AMKC"). (Am. Compl. 1-3.)[1] Plaintiff alleges that correction officers have withheld his mail, stolen it, and failed to send it altogether. He further alleges that they have admitted to regularly opening and reading his legal mail. (Id. at 3, 5, 22, 33.) In particular, he states that officers have "been throwing away, [r]eading and thie[v]ing [his] mail" and that they "stole and thr[e]w [away] garbage [b]ags of mail[,] some stamped." (Id. at 3.) Plaintiff also asserts that he would "put something in the mail [and] get no response . . ." and that he has "no communication with [his] [a]ttorney [be]cause . . . mail do[es]n't go out or [it is] held and return[ed] read or takes 3 to 4 weeks." (Id. at 5.) The witness statements further allege that an officer in the mail room said she was not sending out Plaintiff's mail on instructions from her supervisors, that his mail was thrown away "many times," and that his mail has been held for a period of time and then returned to him without being sent. (Id. at 22, 29, 32, 35-37.)

One witness statement asserts that there is "a [l]imit on legal mail and when you hit your max you can't send mail to courts, [l]egal agencies and witnesses." (Id. at 23.) Another states that Plaintiff and other inmates have been told that they could not "send mail for several months" or "for 12 months." (Id. at 23, 26.) The Amended Complaint also appears to assert that Plaintiff has been improperly denied the right to send mail because he has no money to pay for postage. (See id. at 3, 22, 28, 30.)

Plaintiff alleges that, as a result, the City was responsible for "hampering and stopping [Plaintiff's] defense [and] not allowing [his] motions to [b]e adopted [be]cause of untimely fashion with courts . . . ." (Id. at 4.) He also accuses the City of "stopping access to legal agencies witnesses [l]awyers [l]osing cases civil and criminal . . . and tactics to be unlawfully

---

[1] For ease of reference, any citations to specific pages of the Amended Complaint reflect page number designations made by the Court's Electronic Case Filing system.

convicted." (Id. at 7.)

According to Plaintiff, these events were "ongoing for 26 ½ months" or "24 months," starting when he was in custody at GRVC in 2011 and continuing through his 2013 detention at AMKC. (Id. at 2-3, 5.) He contends that he complained to numerous correction officers and attempted to file grievances, but that his complaints and grievances were ignored. (Id. at 3, 6.) Plaintiff also seems to indicate that he initiated Article 78 proceedings. (Id. at 6, 12.) Since filing his Amended Complaint, Plaintiff has been transferred to Green Haven Correctional Facility in Stormville, NY. (Dkt. 65.)

Plaintiff requests a court investigation and "a ruling about indigent persons and legal mail [and] legal mail in general." (Am. Compl. 4.) He also seeks $10 million in compensatory damages "for pain suffering, . . . health issues and mental stress disorders . . . ." and $20 million in punitive damages. (Id. at 4, 7.)

## II. Applicable Legal Standard

"In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint . . . . [and] draw all reasonable inferences in favor of the plaintiff." Kassner, 496 F.3d at 237 (citation omitted). "This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)). A *pro se* complaint "must be construed liberally with special solicitude and interpreted to raise the strongest claims that it suggests. Nonetheless, a *pro se* complaint must state a plausible claim for relief." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (internal quotation marks and citation omitted).

### III. Discussion

The Second Circuit has explained that tampering with a prisoner's mail may constitute an actionable violation of § 1983 "(1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). Interference with a prisoner's mail thus may implicate two distinct rights: the "right of access to the courts" and the "right to the free flow of incoming and outgoing mail." Id.

#### A. Right of Access to the Courts

Reading the Amended Complaint liberally, Plaintiff alleges that the City violated his constitutional right of access to the courts by interfering with his legal mail. He claims that the correction officers delayed and failed to send his outgoing legal mail, thereby causing him to lose motions and "hampering" his criminal defense. (Am. Compl. 4, 7.) Plaintiff also asserts that correction officers violated his rights by reading his legal mail outside of his presence. (Id. at 3, 5, 11, 33.)

To state a valid access-to-the-courts claim, however, "a prisoner must [also] allege that the prison officials' deliberate and malicious interference resulted in *actual injury*, such as the dismissal of an otherwise meritorious legal claim on direct appeal." John v. New York Dep't of Corr., 130 F. App'x 506, 507 (2d Cir. 2005) (internal quotation marks omitted and emphasis added); see also Christopher v. Harbury, 536 U.S. 403, 415 (2002) (plaintiff must allege injury to a "nonfrivolous" and "arguable" legal claim). In alleging actual injury, Plaintiff must specify in his Amended Complaint which legal matter the City has hindered him from pursuing. See Christopher, 536 U.S. at 415; see also Collins v. Goord, 581 F. Supp. 2d 563, 573 (S.D.N.Y.

4

2008) (explaining that, to show "actual injury" in this context, "plaintiff must demonstrate that the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim").

The allegations of injury in Plaintiff's Amended Complaint are not specific enough to state a plausible access-to-the-courts claim. Plaintiff appears to assert that he lost one or more motions due to mail delays (Am. Compl. 4), but he provides no case names or numbers and does not even specify the court in which his motions were filed. Although Plaintiff further accuses the City of "hampering and stopping my defense . . ." and "[l]osing cases civil and criminal sabotage effort and tactics to [b]e unlawfully convicted," (id. at 4, 7), these allegations are "no more than conclusions . . . not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Accordingly, Plaintiff's access-to-the-courts claim must be dismissed. See, e.g., Bellezza v. Holland, No. 09 Civ. 8434, 2011 WL 2848141, at *5 (S.D.N.Y. July 12, 2011) (dismissing access-to-the-courts claim for failure to allege injury where plaintiff stated that he was "precluded from participating in future unspecified class-action litigation"); Amaker v. Haponik, No. 98 Civ. 2663 (JGK), 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999) (dismissing access-to-the-courts claim for failure to allege injury where plaintiff asserted that interference with his mail delayed his court filings and caused the possible loss of two legal claims).

To the extent that Plaintiff claims that the City's interference with his mail caused him to be wrongfully convicted, there is another basis for dismissal. "In Heck v. Humphrey, 512 U.S. 477, 487 (1994), [the Supreme Court] held that a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." Edwards v. Balisok, 520 U.S. 641, 643 (1997). Plaintiff, therefore, is not permitted to seek monetary relief based on his alleged

5

wrongful conviction, because he has not shown that his conviction has been invalidated. See, e.g., Blake v. Coughlin, 205 F.3d 1321 (2d Cir. 2000) (affirming dismissal of prisoner's wrongful conviction claim under § 1983 because his "conviction has not been reversed or vacated"); Hoard v. Reddy, 175 F.3d 531, 533 (7th Cir. 1999) (explaining why monetary damages are not available under Heck for an access-to-the-courts claim until after a prisoner's conviction has first been set aside); Holmes v. Grant, No. 03 Civ. 3426 (RJH)(RLE), 2006 WL 851753, at *12-13 (S.D.N.Y. Mar. 31, 2006) (section 1983 claim that the defendants caused dismissal of prisoner's habeas petition was barred by Heck).

### B. First Amendment Right to the Free Flow of Mail

The Amended Complaint can also be read to assert a claim that the City violated Plaintiff's First Amendment right to the free flow of incoming and outgoing mail.[2] Plaintiff alleges that correction officers regularly read his legal mail outside of his presence and that they withheld, stole, threw away, and refused to send out his mail for months at a time. The City has not responded to this claim.

Prisoners have a First Amendment right to the free flow of incoming and outgoing mail. See Heimerle v. Attorney General, 753 F.2d 10, 12-13 (2d Cir. 1985). To establish a violation of this right, the prisoner must show that the interference with his mail was both regular and unjustified. See Davis, 320 F.3d at 351. "Restrictions on prisoners' mail are justified only if they 'further[ ] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Id. (alterations in original) (quoting

---

[2] Although this claim is not explicitly asserted in the Amended Complaint, as previously noted, the Court must interpret the Amended Complaint "to raise the strongest claims that it suggests." Hogan, 738 F.3d at 515.

Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986)). "The First Amendment protects prisoners' access to mail directly, unlike the right of access to courts, which protects prisoners' access to mail only derivatively and with respect to given claims." Bellezza, 2011 WL 2848141, at *5-7 (dismissing access-to-the-courts claim for failure to allege injury, but holding that plaintiff adequately alleged a violation of his right to send and receive mail). It is thus not necessary to allege actual injury when asserting a violation of one's right to the free flow of mail. See, e.g., Cancel v. Goord, No. 00 Civ. 2042 (LMM), 2001 WL 303713, at *4, 7 (S.D.N.Y. Mar. 29, 2001) (same); Amaker, 1999 WL 76798, at *3, 5-6 (same).

Plaintiff's assertions that correction officers read, withheld, threw away, and refused to send out his mail for months at a time adequately allege a constitutional violation. When correction officers regularly and unjustifiably read prisoners' mail, whether legal or non-legal, it violates their First Amendment right to the free flow of incoming and outgoing mail. See, e.g., Heimerle, 753 F.2d at 13-14 (plaintiff stated a First Amendment claim where he challenged a prison regulation that permitted guards to routinely read all incoming, non-legal mail); Bellezza, 2011 WL 2848141, at *6-7 (plaintiff stated a First Amendment claim where he alleged that the defendants regularly read his incoming legal mail and withheld it). Similarly, if officers regularly and unjustifiably withheld or threw away Plaintiff's mail, that would also violate his First Amendment rights. See, e.g., Purcell v. Coughlin, 790 F.2d 263, 264-65 (2d Cir. 1986) (plaintiff stated a claim where he alleged that the defendants refused to deliver periodicals to him and interfered with his outgoing mail on one occasion); Moore v. Gardner, 199 F. Supp. 2d 17, 20, 25, 34-36 (W.D.N.Y. 2002) (plaintiff stated a First Amendment claim where plaintiff accused the defendant of "withholding his mail, reading his mail, and disposing of his legal documents").

In addition, Plaintiff has asserted that the interference with his mail continued for approximately two years (Am. Compl. 2-3, 5), which is more than sufficient to allege that the City's conduct was regular. See Washington, 782 F.2d at 1139 (although *pro se* prisoner specifically described only two instances of mail interference he had adequately alleged a "continuing activity"). The City's motion to dismiss is therefore denied as to Plaintiff's claim that it violated his First Amendment right to the free flow of incoming and outgoing mail.

### C.    Municipal Liability

The City contends that Plaintiff "has failed to allege a basis for municipal liability." (Def.'s Mem. of Law 7.)   "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (alteration in original) (quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)).

Although Plaintiff has not pointed to an official, written policy, it can reasonably be inferred from the Amended Complaint that Plaintiff has alleged the existence of a policy or custom which was established at the supervisory level or which was "so manifest as to imply the constructive acquiescence of senior policy-making officials." Sorlucco v. N.Y. City Police Dep't, 971 F.2d 864, 870-71 (2d Cir. 1992). Reading the Amended Complaint liberally, it alleges that numerous correction officers withheld, threw away, stole, and refused to send out Plaintiff's mail regularly and without justification for approximately two years. (Am. Compl. 2-3, 5, 22-23, 26, 28-30, 32, 35-37.)  Plaintiff asserts that the events occurred at two different facilities and that he filed grievances and made repeated complaints. (Id. at 2-3, 5-6.)  Plaintiff explicitly refers to the existence of a "policy," asserting that, when he complained to a correction

8

officer in the mail room "she gave me attitude about that[']s the[ir] policy."[3] (Id. at 5.)

Beyond Plaintiff's own assertions, the signed witness statements incorporated into his Amended Complaint support Plaintiff's allegation regarding the existence of a policy or custom. One statement alleges that "the mail lady" said she had read Plaintiff's mail and that she was not sending out Plaintiff's mail, "[b]ecause her supervisors and courts told her she won't get paid." (Am. Compl. 22.) Another alleges that "superiors and sub[ord]inates" have placed "a [l]imit on legal mail and when you hit your max you can't send mail to courts, [l]egal agencies and witnesses" and that Plaintiff and other inmates were informed that they could not "send mail for several months." (Id. at 23.) Yet another attests that "they" were "holding [b]ack mail [be]cause the[ir] supervisors and courts told them to or they don't get paid." (Id. at 35.)

Taking into account the liberal pleading standards applicable to *pro se* litigants, the Court finds that Plaintiff has adequately stated a claim for municipal liability. In Carrasquillo v. City of New York, 324 F. Supp. 2d 428, 437 (S.D.N.Y. 2004), a *pro se* prisoner asserted "that the City [was] liable for causing his injuries . . . by failing to provide him with a seatbelt," and the district court concluded that "[r]ead charitably, Plaintiff's complaint alleges that the City has adopted the policy of not providing prisoners with adequate protection on corrections bus[]es." See also Gachette v. Metro N. High Bridge, No. 12 Civ. 3838 (AJN), 2013 WL 144947, at *5-6 (S.D.N.Y. Jan. 14, 2013) (inferring from *pro se* plaintiff's assertions of pay- and work-assignment disparities that he had alleged discrimination due to a municipal policy or custom). Plaintiff's Amended Complaint therefore meets the standard for a *pro se* litigant to assert municipal liability in this Circuit.

---

[3] Plaintiff also refers to the personal involvement of the former Kings County District Attorney and two Assistant District Attorneys. (Am. Compl. 3, 27, 31.) In addition to the fact that the District Attorney is a representative of New York State, not the City, see Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988), other than bare conclusory allegations, Plaintiff has not alleged any facts from which the Court could plausibly infer that these individuals were involved in the alleged interference with Plaintiff's mail.

9

### D. Relief Available

As described above, Plaintiff seeks, among other things, $10 million in compensatory damages and $20 million in punitive damages. (Id. at 4, 7.) The Prison Litigation Reform Act precludes plaintiffs from recovering damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although Plaintiff alleges that, in addition to "[e]motional distress, emotional d[e]spair, mental anguish, post traumatic stress disorder, . . . [and] paranoia disorder," he also suffers from "kidney diseases" and other physical injuries, he has not explained how these alleged physical injuries are connected in any way to the asserted interference with his mail. (Am. Compl. 3.) Accordingly, Plaintiff is barred from recovering damages for mental or emotional injuries.

Plaintiff is also precluded from recovering punitive damages from the City of New York under § 1983. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Ciraolo v. City of New York, 216 F.3d 236, 242 (2d Cir. 2000). He is similarly unable to obtain declaratory or injunctive relief, because he is no longer in the custody of the City and those claims are thus moot. See, e.g., Young v. Coughlin, 866 F.2d 567, 568 n.1 (2d Cir. 1989). If Plaintiff prevails in this action, however, he may be entitled to other relief, such as nominal damages[4] or damages for the loss of any property. See Thompson v. Carter, 284 F.3d 411, 418-20 (2d Cir. 2002). Therefore, his lawsuit need not be dismissed at this stage.

### IV. Conclusion

For the foregoing reasons, Plaintiff's claim that the City violated his constitutional right of access to the courts is dismissed. Plaintiff's First Amendment claim may proceed under the theory that he may be entitled to nominal or compensatory damages for the City's alleged

---

[4] Nominal damages can be defined as "[a] trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated." 447 Black's Law Dictionary (9th ed. 2009).

interference with his right to the free flow of mail. The City shall notify the Court by April 3, 2014 if referral for a settlement conference with Magistrate Judge Gorenstein would be productive at this time. The Clerk of Court is respectfully directed to close the motions at docket numbers 47 and 63.

SO ORDERED.

Dated:    March 27, 2014
         New York, New York

_____
Ronnie Abrams
United States District Judge